## JAMESON v. FLOURNOY et al.

No. 8570—Opinion Filed Feb. 26, 1918.

On Rehearing, Oct. 28, 1919.

**1. Trial—Demurrer to Evidence.**

When all the facts which the evidence in a reasonable degree tends to prove and all inferences or conclusions which may be reasonably drawn therefrom are sufficient to support the verdict, it is not error for the court to overrule a demurrer to the evidence on the ground that the same is insufficient to support the verdict.

**2. Trial—Refusal of Instruction—Defining Words.**

It is not error for the court to refuse to define a word of general and accepted meaning, which is understood by men of reasonable intelligence in all walks of life, and has a well-understood, accepted, and general meaning.

(Syllabus by West, C.)

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by W. G. Flournoy and R. D. Flournoy, partners doing business as Flournoy Bros., against John B. Jameson. Judgment for plaintiffs, and defendant brings error. Affirmed.

Carroll & Mason and C. H. Rosenstein, for plaintiff in error.

Randolph, Haver & Shirk, D. G. Elliott, and Elton B. Hunt, for defendants in error.

Opinion by WEST, C. On the 23d day of November, 1914, defendants in error sued plaintiff in error in the superior court of Tulsa county, Okla., for the sum of $1,155, which they claimed as a balance due them upon a drilling contract, wherein they were to drill an oil and gas well in Wagoner county, Okla. Upon a trial to a jury defendants in error, plaintiffs below, recovered a judgment for the amount sued for, and plaintiff in error, defendant below, has prosecuted this appeal. Parties will hereinafter be referred to as they appeared in the court below.

There are only two questions involved in this appeal which are seriously urged by appellants, both involving the construction of the following clause of the contract, to wit:

"The well, when completed as aforesaid,

shall be delivered to the party of the second part by the party of the first part, free from all liens, claims or incumbrances for work and labor done, or materials furnished to the party of the first part; and until said well is completed and delivered as hereinbefore provided, unless the same is abandoned in the manner above provided, none of the sums hereinbefore provided to be paid to the party of the second part shall be due."

First. Did plaintiffs deliver or offer to deliver the well free from all lien claims and incumbrances?

Plaintiffs sued upon the drilling contract, attaching a copy of same to their pleadings; to plaintiffs' petition, defendant filed answer, first paragraph being a general denial, and following this by specifically denying that the well had been drilled to the depth of 1,200 feet as stipulated in the contract, denied the delivery thereof, and set up a counterclaim for damages on account of money paid in advance of the terms for payment specified in the contract. To the affirmative allegations contained in defendants's answer, plaintiffs filed a general denial.

The first proposition contended for by appellant was that plaintiffs failed to prove in the trial of the cause below that, at the time they claimed they delivered, or offered to deliver, said well, the same was free from all lien claims and incumbrances.

Upon an examination of the pleadings and the issues as presented to the trial court below, it appears that there was no contention on the part of the defendant that there was a lien or incumbrance against the well, but the main issue that seemed to be involved, and which was contested, was whether or not the well had been drilled to the depth specified in the contract, to wit, 1,200 feet. After plaintiffs had closed their evidence, a demurrer to the same was presented raising the question that the evidence on the part of the plaintiffs did not affirmatively show that there was no lien claims or incumbrances against the well. One of the plaintiffs below was asked if he had carried out all of the requirements under the contract, and he replied that he had. While this was rather a vague and indefinite way to prove affirmatively that he had complied with all the conditions imposed upon plaintiffs by the contract, still, inasmuch as this was not an issue in the court below, and the defendant had a right, if he was seriously contending that there were liens or incumbrances against the well, to have gone into this subject, and failed to do, we are of the opinion that this evidence is sufficient, in the absence of any other, to prove that there was no lien claim or incumbrance against the well. This proposition goes only to the question as to whether or not the evidence was sufficient to support the verdict.

In case of Shawnee Fire Ins. Co. v. Thompson & Rowell, 30 Okla. 467, the 7th paragraph of the syllabus is as follows:

"When the evidence, with all the inferences that can be properly drawn from it, is insufficient to support a verdict, it is reversible error to overrule a demurrer thereto."

Under the rule laid down in this case can we say, in view of the issues that were really contested in the court below, that the evidence, with all the inferences that can properly be drawn therefrom, is insufficient to support the verdict? We think not, because plaintiff testified that he had complied in all respects with the conditions of the contract; that is, he had carried out all the conditions of the contract imposed upon plaintiffs. The inference to be drawn from this testimony is that every condition which was imposed upon plaintiffs by the terms of said contract, or which had been imposed upon them by the contract, had been performed by plaintiffs.

In the case of Johnson v. Jones, 39 Okla. 323, 135 Pac. 12, 48 L. R. A. (N. S.) 547, the sixth paragraph of the syllabus is as follows:

"A general verdict on conflicting evidence presumptively includes a finding of all the facts necessary to establish the prevailing party's claim."

The rule in this jurisdiction seems to be that, when all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn therefrom, are sufficient to support the verdict, the verdict will not be disturbed.

When we consider the evidence quoted above in the light of the pleadings and the contested issues below, it seems to us that all the evidence considered together, and all inferences or conclusions which may reasonably be drawn therefrom, were sufficient to show that at the time of the alleged delivery or the offer to deliver the well, there was no valid lien or incumbrance against the same.

On the second proposition, defendant complains of the following paragraphs of the court's charge:

"Four. You are instructed that, unless you believe from a preponderance of the evidence that the plaintiffs did drill the well to a depth of 1,200 feet or more, and thereafter delivered, or offered to deliver, said well to the defendant, then your verdict should be for the defendant.

"Five. You are instructed that if you believe from a preponderance of the evidence

that the plaintiffs drilled a well to the depth of 1,200 feet or more, and thereafter delivered, or offered to deliver, said well to the defendant completed to a depth of 1,200 feet or more, then your verdict should be for the plaintiffs in the sum of $1,102.50; and, if you further believe from a preponderance of the evidence that after said well was drilled, if you find that it was drilled to a depth of 1,200 feet or more, the plaintiffs were employed by the defendant to pull the casing and plug the well, and they did so, then the plaintiffs would be entitled to recover such sum as you find from the evidence they are entitled under said contract, not to exceed the sum of $25. If you find that the contract has been complied with on the part of the plaintiffs. then they would be entitled to attorney's fees under said contract not to exceed the sum of $25. In all, your judgment for the plaintiffs, if you find they have complied with their contract, cannot exceed the sum of $1,152.50, with interest at 6 per cent. from the 21st day of April, 1914."

The objections directed against these paragraphs of the charge complained because the court did not define the word "delivered." In reading these paragraphs we do not think that the instructions of the court are open to this assault. The word "delivered" or "deliver" has a general and accepted meaning, which is understood by men of reasonable intelligence in all walks of life. All men understand that the "delivery" of a deed or of a note or of a written instrument, and most chattels, for that matter, is accomplished by the passing of the actual physical possession of the same, but that the "delivery" of a farm, a mill, or an oil well would have a somewhat different meaning. A man of ordinary intelligence, when considering what was meant by the "delivery" of an oil and gas well, would necessarily understand that it contemplated an opportunity to examine and inspect the same, and, if desired, to go into the possession thereof.

It is our opinion that the word "delivery" or "deliver" is so generally used in the everyday affairs of life, being involved in almost every transaction, however simple or complex, it has a general accepted and well-understood meaning, and that any effort on the part of the court to explain or define what was meant thereby would have been more likely to have misled and confused the jury than to have aided and assisted them in applying the word in the connection in which it was employed in this contract.

Finding no error, it is our opinion that the judgment should be affirmed; and it is so ordered.

### On Rehearing.

PER CURIAM. The petition for rehearing in this case was heretofore granted, and the cause has been reheard on oral argument and briefs submitted. After further consideration of the questions urged for reversal of the judgment of the trial court, we are of the opinion that the former decision is correct, and the opinion of the commission, filed on February 26, 1918, is adopted as the opinion of the court in this case.